**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL HALL and KATHRYN TYLER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 13 C 441 |
| v. | ) | |
| | ) | Judge Zagel |
| THE CITY OF CHICAGO, | ) | |
| | ) | Magistrate Kim |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

## INTRODUCTION

In their one-count Complaint, Plaintiffs challenge, as violating the right to keep and bear arms, provisions of the Municipal Code of Chicago ("MCC") restricting the carrying of operable firearms outside the home. This count has two aspects. First, it challenges the provisions to the extent that they restrict carrying in public places, such as streets and sidewalks. Second, it challenges the provisions to the extent that they restrict carrying on private property outside one's home, such as one's porch or yard, or in one's workplace.

Plaintiff's Complaint should be dismissed in its entirety. As to carrying in public places, Plaintiffs lack standing because their injury cannot be redressed by this Court. The injury they allege is the inability to carry operable firearms for self-defense in public. But this conduct is prohibited by Illinois law as well as Chicago law. Accordingly, even if the Court were to enjoin the MCC provisions challenged here, Illinois law would continue to stand as an independent bar to Plaintiffs' carrying in public. Because a victory in this lawsuit would not bring Plaintiffs any real, practical relief, the Court should not hear the claim.

As to carrying on private property or in the workplace, that claim is duplicative of a claim brought by these same Plaintiffs over two years ago in another lawsuit still pending in this district: *Pacholski, et al. v. Chicago*, 10 cv 4184 (N.D. Ill.).[1]  The resources of the Court and the parties should not be wasted by litigating this claim a second time.

## **BACKROUND**

The Complaint contains one count, which challenges, as violating the Second and Fourteenth Amendments, City restrictions on carrying operable guns outside the home as contained in MCC sections 8-20-010, 8-20-020, 8-20-030, and 8-20-180(c).  MCC 8-20-010 defines "home" as "the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic."  It excludes "(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A."  *Id.*  MCC 8-20-020(a) provides that handguns may not be carried outside of one's home, and MCC 8-30-030(a) provides that long guns may not be carried outside one's home or fixed place of business.[2]  MCC 8-20-180(c) provides that a resident may not possess a firearm at a location other than an address authorized on a Chicago firearm registration certificate.

Plaintiffs challenge these provisions to the extent that they prevent residents from

---

[1]  The operative complaint in *Pacholski* is attached hereto as Exhibit A.  *Pacholski* is also sometimes captioned as *Illinois Association of Firearm Retailers v. City of Chicago*.

[2]  Under MCC 8-20-020(b)(17) & -030(b)(1), residents may carry firearms outside the home so long as they are engaged in the "lawful transportation" of a firearm, which (among other things) generally means that the firearm must be "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case."  MCC 8-020-010.

carrying guns for self defense in public areas beyond their private property or fixed place of

business (hereinafter the "Public Places Claim"). For instance, Plaintiffs describe a resident

wanting to carry while walking the dog around the block, a store owner wanting to carry while *en*

*route* to work, or a salesman wanting to carry while doing business in certain neighborhoods.

*See* Compl. ¶ 10. *See also id.* ¶ 24 (Plaintiffs Hall and Tyler would carry "a loaded and

accessible weapon . . . in their cars for self-defense").

In addition, Plaintiffs challenge the cited provisions to the extent that they prevent

residents from carrying firearms on their own private property outside their home or in their fixed

place of business (hereinafter the "Private Property and Business Place Claim"). For instance,

the Complaint describes burglaries of Mr. Hall's vehicles on his driveway and contends that Mr.

Hall is prohibited from carrying guns "on all parts of his property, including the curtilage of his

home." Compl. ¶ 17. *See also id.* ¶ 21 (Dr. Tyler wishes to carry handgun in her backyard and

garage). And the Complaint alleges that the alarm at Dr. Tyler's business has gone off and that

she would carry a handgun there if not prohibited by the City. *See* Compl. ¶ 20.

## ARGUMENT

**I.      Plaintiffs lack standing to bring the Public Places Claim because it is not redressable.**

Standing is "an essential and unchanging part of the case-or-controversy requirement of

Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing,

Plaintiffs must show: (1) an injury-in-fact, which is an invasion of a legally protected interest that

is concrete and particularized and, thus, not conjectural or hypothetical; (2) a causal relation

between the injury and the challenged conduct, such that the injury can be fairly traced to the

challenged action of the defendant; and (3) a likelihood that the injury will be redressed by a

favorable decision. *See id.* at 560-61. *See also DH2, Inc. v. U.S. S.E.C.*, 422 F.3d 591, 596 (7th

Cir. 2005).

The redressability requirement guards against litigation that is fruitless. It ensures "that

the legal questions presented to the court will be resolved . . . in a concrete factual context

conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge*

*Christian College v. Americans United For Separation of Church and State*, 454 U.S. 464, 472

(1982). Thus, it requires that the relief sought by Plaintiffs "will remove the harm" alleged and

that they "personally would benefit in a tangible way from the court's intervention." *Warth v.*

*Seldin*, 422 U.S. 490, 505, 508 (1975). *See also Harp Advertising Illinois, Inc. v. Village of*

*Chicago Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993) (no redressability where, even though plaintiff

is injured, "winning the case will not alter that situation"). Plaintiffs have the burden of

establishing redressability. *See Lujan*, 504 U.S. at 561; *DH2*, 422 F.3d at 596.

Here, the injury Plaintiffs seek to redress is their inability to carry operable firearms for

self defense in public. *See* Compl. ¶ 18 (Mr. Hall "is prohibited" by the MCC provisions from

carrying firearm "when he is traveling late at night or into certain areas of the City"). *See also id.*

¶ 24. This alleged injury cannot be redressed by the Court, because Illinois state law

independently prohibits Plaintiffs from engaging in the very same conduct that is restricted by the

MCC provisions. The Illinois Criminal Code generally makes it unlawful for a person to carry or

possess a firearm outside of one's land, abode, legal dwelling, or fixed place of business, unless

the firearm is broken down into a non-functioning state, not immediately accessible, or unloaded

and enclosed in a case or container. *See* 720 ILCS § 5/24-1(a)(4), -1(a)(10) & -1.6(a). The

4

Illinois Wildlife Code is even more restrictive – it requires that all firearms transported in any vehicle be unloaded and in a firearms case. *See* 520 ILCS § 5/2.33(n). Accordingly, even if Plaintiffs achieved total success on the merits and the Court enjoined the MCC's restrictions on carrying in public, that would afford Plaintiffs no real, practical relief because Illinois law would continue to ban the conduct. Plaintiffs therefore lack standing to assert this claim because the Court could not fashion relief that would redress their alleged injuries.[3]

The Seventh Circuit's decision in *Harp* illustrates the lack of redressability here. The plaintiff in *Harp* challenged provisions of the Village's sign and zoning codes that prevented it from building a 1,200 square-foot billboard. *See Harp,* 9 F.3d at 1291. The court found that the plaintiff did not have standing to challenge either the sign or the zoning code because a different Village ordinance (not challenged by the plaintiff) prevented any sign larger than 200 square feet. *See id.* Thus, the plaintiff could not show that its injury – *i.e.,* not being allowed to erect the billboard – "[would] be redressed by a favorable decision." *Id.* at 1292. "[W]inning the case [would] not alter" the plaintiffs' inability to build the sign because, due to the separate 200 square-feet requirement, the plaintiff "could not put up its sign even if it achieved total victory" against the sign and zoning code. *Id.* at 1291-92. *See also Nuclear Information and Resources Service v. Nuclear Regulatory Comm'n.,* 457 F.3d 941, 955 (9th Cir. 2006) (no standing where court could not give remedy that would redress injury: "even if we were to set aside the current NRC rule . . . the DOT rule would control . . . and the DOT regulation is not before us");

---

[3] The City does not concede that Plaintiffs are able to satisfy the other requirements of Article III standing, and it reserves the right, should this case not be dismissed, to challenge Plaintiffs' standing on other grounds after discovery has been completed and at the appropriate stage of litigation.

*Lockridge v. Village of Alsip,* No. 03 CV 6720, 2005 WL 946880, *2 (N.D. Ill. April 18, 2005) (applying *Harp* and finding that plaintiff lacked standing to bring claims where relief sought was barred by other provisions of zoning code); *Midwest Media Property, LLC v. Symmes Township*, 503 F.3d 456, 461-63 (6th Cir. 2007) (same); *KH Outdoor, LLC v. Clay County*, 482 F.3d 1299, 1303 (11th Cir. 2007) (same).

To be sure, the Seventh Circuit recently ruled that the carrying restrictions contained in 720 ILCS 5/24-1(a)(4), (10), & 1.6(a) are invalid under the Second Amendment. *See Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), *rehearing denied*, 2013 WL 656749 (Feb. 22, 2013). But this does not cure the redressability problem, for two reasons. First, the Seventh Circuit stayed entry of the mandate in *Moore* for 180 days in order to "allow the Illinois legislature to craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment as interpreted in this opinion, on the carrying of guns in public." *Moore*, 702 F.3d at 942. Accordingly, because *Moore* was issued on December 11, 2012, the mandate is stayed until June 9, 2013. Until that date, Illinois' carry restrictions remain on the books, and Plaintiffs remain prohibited by those laws from carrying guns in public. *See also* Compl. ¶ 17 & n.1. (Plaintiff Hall wishes to carry "throughout" Chicago "consistent with the decision in *Moore*," but acknowledging that the "implementation" of the *Moore* decision is "delayed" for 180 days).

Second, and more importantly, Plaintiffs have not shown, nor can they show – as is their burden – that they would be allowed to carry guns in public under any new gun statutes that Illinois may pass before the mandate issues in *Moore*. There is no guarantee at present that Plaintiffs will be able to comply with any forthcoming laws, and, indeed, they may never be able

6

to. Until the laws are drafted, enacted, and complied with by Plaintiffs, Plaintiffs will not be able to establish that Illinois law no longer stands as independent barrier to their being able to carry in public.

For instance, Illinois could choose to adopt a carry law like New York state's. Under New York's law, residents are generally not free to carry operable handguns in public unless they have received a license, and a resident must satisfy numerous criteria before receiving a license, including showing that they have "proper cause" for the license. *See Kachalsky v. County of Westchester*, 701 F.3d 81, 85-86 (2nd Cir. 2012). Licensing officers have "considerable discretion" in deciding whether proper cause exists, and to show proper cause, an applicant must show "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Id.* at 86-87. A "generalized desire" to carry a gun for self-protection is not enough, nor is living or working in a high-crime area. *See id.* If Illinois were to adopt a similar system, Plaintiffs would be precluded from carrying under Illinois law until they satisfied all required criteria and received a license – something that, due to the discretion afforded the "proper cause" determination, is far from guaranteed. Accordingly, it is purely speculative at this point that Plaintiffs would ever be free under Illinois law to carry in public; and until they show that they are free to carry under Illinois law, a victory here will bring them no real, practical relief. *See, e.g., DH2,* 422 F.3d at 596-97 (redressability must be more than speculative, especially when it involves discretion or actions of parties not before court); *Alger v. City of Chicago*, 748 F. Supp. 617, 622 n.3 (N.D. Ill. 1990) (even if court struck down law precluding landmark designation of church, "there is at least some likelihood" that church "would remain undesignated" because reviewing authorities may decline to designate church).

7

Allowing Plaintiffs' claim to go forward would therefore thwart one of the key purposes of the standing requirement – to limit the federal court's jurisdiction to actual cases and controversies with real prospects for resolution. *See, e.g.*, *Warth*, 422 U.S. at 498 (case or controversy requirements respect "the proper – and properly limited – role of the courts in a democratic society"). Therefore, because Plaintiffs cannot show that their injury is redressable, they lack Article III standing to pursue their Public Places Claim, and it should be dismissed.

**II.     The Private Property and Business Place claim is duplicative of Plaintiffs' claim in another lawsuit.**

Count I also includes a challenge to the City's restriction on carrying guns on private property outside one's home (such as yards and porches) and on carrying handguns in a fixed place of business. This claim should be dismissed because it duplicates a claim filed by Plaintiffs in this District in 2010 in *Pacholski*, which is pending in front of Judge Chang.

"As a general rule, a federal suit may be dismissed for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). "A suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 889 (7th Cir. 2012). "District courts are accorded a great deal of latitude and discretion in determining whether one action is duplicative of another." *Serlin*, 3 F.3d at 223. The judicial system should not tolerate the "irrationality" of duplicative litigation particularly "where, as here, two federal judges sitting on the same district court are . . . devoting scare judicial resources to the adjudication of the same charges by essentially the same plaintiffs against the same defendants." *Serlin*, 3 F.3d at 224

(citation omitted).

All of these factors are present here. *First*, both actions involve the same parties: Mr. Hall and Dr. Tyler are plaintiffs, and the City is a defendant, in both this suit and in *Pacholski*. *See* Exhibit A hereto (operative complaint in *Pacholski*). *Second*, both actions raise the same claim: namely, that MCC 8-20-010, 8-20-020, -030, & -180(c) violate the Second and Fourteenth Amendments to the extent that they restrict the carrying of operable guns on one's own property outside the home, and the carrying of operable handguns in one's fixed place of business. Those provisions are challenged in Counts I & V of the operative complaint in *Pacholski*, *see* Exhibit A hereto, and, as they do here, Plaintiffs challenge these provisions in *Pacholski* to the extent that they "outlaw[] the exercise of the right to bear arms in self-defense even when one is in one's own garage, on one's own back porch, or on the steps leading up to one's front door," and to the extent that they "impose[] a complete and total ban in Chicago on possessing or carrying a firearm outside one's "home" (as narrowly defined by the Ordinance) for personal protection—except in one's fixed place of business, where long guns, but not handguns, are permitted." *Id.* ¶¶ 52, 69. *Pacholski* also contains allegations virtually identical to those here regarding how these provisions prevent Plaintiffs from carrying guns on their private property and in the workplace. As he does here, *see* Compl. ¶ 17, Plaintiff Hall describes burglaries of vehicles on his driveway and contends that he is prohibited from carrying guns "on all parts of his property, including the curtilage of his home." Exhibit A hereto, ¶ 36. And as she does here, *see* Compl. ¶ 20, Dr. Tyler alleges that the alarm at her business has gone off and that she would carry a handgun there if not prohibited by the City. Exhibit A hereto, ¶ 31. *Third*, both actions seek the same relief for this claim – *i.e.*, a declaratory judgment that the restrictions violate the

Second and Fourteenth Amendments, and entry of an injunction against their enforcement. *See* Compl. at 9; Exhibit A hereto, at 16-17.

In sum, Plaintiffs "will be able to obtain complete relief" in *Pacholski* for their Private Property and Business Place challenge to MCC 8-20-010, 8-20-020, -030, & -180(c), and the claim should be dismissed here for that reason alone. *McReynolds*, 694 F.3d at 889. Dismissal is also warranted because "the chance for conflicting rulings will be avoided, and the burden of discovery will be eased since all of the parties are before one court" in *Pacholski*. *Resource Asset Management, Inc. v. Continental Stock Transfer & Trust Co.*, 896 F. Supp. 782, 785 (N.D. Ill. 1995). Indeed, lengthy discovery in *Pacholski* has concluded and cross-motions for summary judgment are fully briefed and pending before Judge Chang. *See* Exhibit B hereto. There is no reason to consume the resources of the Court and the parties in this case by going down that same road again.

## **CONCLUSION**

For the foregoing reasons, the City respectfully requests that the Court dismiss Plaintiffs'

Complaint.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>STEPHEN R. PATTON<br>CORPORATION COUNSEL<br>CITY OF CHICAGO</td></tr>
<tr><td>Dated: March 14, 2013</td><td>BY: <u>/s/ Andrew Worseck</u><br>One of Its Attorneys</td></tr>
</table>

Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-9010