# EXHIBIT    A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS ASSOCIATION OF FIREARMS** | ) | |
| **RETAILERS, KENNETH PACHOLSKI,** | ) | |
| **KATHRYN TYLER, and MICHAEL HALL,** | ) | |
| | ) | **FILED: January 27, 2011** |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 10-cv-04184 |
| | ) | Judge Edmond E. Chang |
| **THE CITY OF CHICAGO and** | ) | |
| **RICHARD M. DALEY, Mayor of the** | ) | |
| City of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**
**FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs ILLINOIS ASSOCIATION OF FIREARMS RETAILERS, KENNETH

PACHOLSKI, KATHRYN TYLER, and MICHAEL HALL, by and through their attorneys, for

their complaint against Defendants CITY OF CHICAGO and RICHARD M. DALEY, Mayor,

state as follows:

**INTRODUCTION**

1.      This is an action to vindicate the federal constitutional rights of residents of

Chicago, Illinois, to keep and bear arms under the Second and Fourteenth Amendments to the

United States Constitution.

2.      The Supreme Court has unequivocally declared that the Second Amendment

"guarantee[s] the individual right to possess and carry" arms. *District of Columbia v. Heller*, 128

S. Ct. 2783, 2797 (2008).  In particular, *Heller* struck down a ban on the possession of handguns,

1

"the most popular weapon chosen by Americans for self-defense in the home." *Id.* at 2818. The

City of Chicago ("the City") has long denied this fundamental right to its citizens, banning, as of

1982, all possession of handguns for any purpose whatsoever. In *McDonald v. City of Chicago*,

130 S. Ct. 3020 (2010), the Supreme Court made clear that, like other fundamental constitutional

rights, the right to keep and bear arms is protected against infringement by state and local

governments. Because of the Supreme Court's ruling, the City recognized that its total ban on

handgun possession was patently unconstitutional and, therefore, promptly amended its firearms

ordinance.

3.     As the Supreme Court has noted, however, the City views the Second Amendment

as "a second-class right," *id.* at 3044 (plurality opinion), to be "singled out for ... specially

unfavorable [] treatment," *id.* at 3043 (majority opinion). Thus, the City enacted a host of new

restrictions that have the purpose and effect of preventing Plaintiffs and other law-abiding

residents of Chicago from exercising their fundamental right to keep and bear firearms for self-

defense and other lawful purposes.

## PARTIES

4.     The Illinois Association of Firearms Retailers ("ILAFR") is a non-profit entity

organized under the laws of the State of Illinois and Section 501(c)(6) of the Internal Revenue

Code to promote the interests of the firearms retail industry and the protection of Second

Amendment rights. Its principal place of business is in Carbondale, Illinois. Its members engage

in the sale of firearms, the operation of shooting ranges, and the operation of combined retail

operations/firing ranges in Illinois.

5.     Plaintiff Kenneth Pacholski is a resident of Chicago and a citizen of the United

States.

2

6.    Plaintiff Kathryn Tyler is a resident of Chicago and a citizen of the United States.

7.    Plaintiff Michael Hall is a resident of Chicago and a citizen of the United States.

8.    Defendant City of Chicago is a political subdivision of the State of Illinois.

9.    Defendant Richard M. Daley is the Mayor of Chicago, which is his principal place of business, and he is sued in his official capacity.

10.    The City of Chicago, Mayor Daley, and their officers, agents, and employees will sometimes hereafter be referred to as "Defendants."

## JURISDICTION

11.    This action seeks relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988. Therefore, jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3), in that this action seeks to redress the deprivation, under color of law, of rights secured by the United States Constitution.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

13.    On June 28, 2010, the Supreme Court of the United States held in *McDonald v. Chicago*, 130 S. Ct. 3020 (2010), that the Second Amendment right to keep and bear arms restrains state and local governments through incorporation in the Fourteenth Amendment.

14.    The Supreme Court remanded the case for the lower courts to apply the Second Amendment to the challenged Chicago ordinance that effectively banned private ownership of handguns within the city. In anticipation that the ordinance challenged in *McDonald* would be struck down, the City Council of Chicago, on July 2, 2010, amended the Municipal Code of Chicago as it pertains to firearms ("the Ordinance") (a copy is attached as Ex. A).

3

15.    In his statements during the July 2, 2010 City Council meeting, Alderman Fioretti declared that the vindication of Second Amendment rights in *McDonald* "was not a good decision for law-abiding citizens." Alderman Solis concurred, stating that "the decision made by the Supreme Court is not really in the best interests of our citizens." Alderman Dixon denounced what she called the Court's "blatant ... misreading of the law." Another Alderman likewise criticized the Justices of the Supreme Court, saying that "[w]e're here today because of their poor judgment ... of how life is in large urban settings and cities like ... Chicago. I don't know how they can say we would be safer by allowing individuals, even if they are law-abiding citizens, to own and possess firearms in their homes."

16.    Alderman Lyle forecast that future generations would react to the Supreme Court's decision in *McDonald* with "shock and awe. And they are going to be amazed that in a country that [holds] itself to be a leader of the free nations that we have such a reckless love affair with guns.... They're going to wonder what madness overtook this country. And that's where we find ourselves. ... We find ourselves with a Court that...used to be occupied by just literary legal giants, who now [use] this opportunity to write [an] opinion and take a slap at the leaders of the City of Chicago."

17.    Alderman Hairston complained about what he described as "the message the Supreme Court is sending. I think that's the same message that the gang bangers are sending, that a life is not valuable. That truly hurts my soul here. I have to say it: I think the Supreme Court is wrong."

18.    Alderman Mary Ann Smith echoed her fellows on the City Council, vowing to limit gun ownership with new legal restrictions and thanking "everyone who has worked to try and create as restrictive a tool as possible." In describing the new Ordinance on July 1, 2010,

4

Chicago Corporation Counsel Mara Georges lauded its bans and restrictions and concluded that "[w]e've gone farther than anyone else ever has."

19.    In findings issued in support of the Ordinance, the City Council Committee on Police & Fire specifically stated that it was "essential" to "limit[] the number of handguns in circulation."

<u>THE NEW FIREARMS ORDINANCE</u>

20.    Several of the provisions of the Ordinance infringe Plaintiffs' constitutional right to keep and bear arms and are therefore challenged here.

21.    Section 4-144-010 states that it shall be unlawful for any person "to engage in the business of selling, or to sell, give away or otherwise transfer, any ... deadly weapon which can be carried or concealed on the person ... without securing a weapons dealer license." The Section further states that "[i]t shall be unlawful for any person" possessing a weapons dealer license" "to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm." Section 8-20-100 states that "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm." Thus, apart from bequests, the Ordinance imposes a total ban on the sale or transfer of firearms within Chicago.

22.    Section 8-20-110 prohibits possession of a firearm without a Chicago Firearms Permit, and Section 8-20-120 states that no person can obtain such a permit without "an affidavit signed by a firearm instructor certified by the State of Illinois ... attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training." Yet Section 8-20-280 states that "[s]hooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited." Thus, the Ordinance dictates that there can

5

be no place in Chicago where one can obtain the firearms training that the Ordinance itself

mandates for legal possession of a firearm.

23.    Section 8-24-010 states that "[n]o person shall fire or discharge any firearm within

the city, except in the lawful self-defense or defense of another" or for delimited hunting

purposes. Although on its face this purports to preserve the right to use a firearm in self-defense,

by proscribing the discharge of a gun for training or practice purposes, the Ordinance dictates

that the residents of Chicago cannot obtain in Chicago the firearms training that the Ordinance

itself requires and that is otherwise desired by Plaintiffs and other gun owners to achieve and

maintain proficiency in the use of their firearms.

24.    Section 8-20-040 prohibits the possession of more than one "assembled and

operable" firearm within the home, even by someone who is fully licensed to possess a firearm

by the Ordinance. Any other firearms owned by that person must be disassembled or otherwise

rendered "inoperable." If there two or more persons in the home with CFPs and registration

certificates, each such person is allowed only one gun in an operable condition. The Ordinance

thus bars a licensed gun owner from keeping more than one operable firearm in the home for

self-defense, either to have a firearm available in more than one room of the dwelling in case of

emergency, or to have a firearm available to more than one adult member of the family. In the

event of a home invasion, all family members would be dependent upon the ability of a single

person in a single location to obtain immediate access to a single operable weapon.

25.    Section 8-20-020 renders it "unlawful for any person to carry or possess a handgun,

except when in the person's home." Section 8-20-030 renders it "unlawful for any person to

carry or possess a long gun, except when in the person's home or fixed place of business." The

term "home" is sharply limited, defined to exclude "any garage, including an attached garage, on

6

the lot" and "any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas." MCC § 8-20-010. Section 8-20-140(a) renders it "unlawful for any person to carry or possess a firearm without a firearm registration certificate," and Section 8-20-180(c) states that "[a] registration certificate shall only be valid for the address on the registration certificate," and "[e]xcept in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." "Lawful transportation" means transportation by a person who has a FOID card, a CFP, and a firearm registration certificate, and whose firearm is "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case." MCC § 8-20-010. The Ordinance thus imposes a total ban in Chicago on possessing or carrying a firearm for personal protection outside one's "home" (as narrowly defined by the Ordinance), except in one's fixed place of business where long guns, but not handguns, are permitted.

26. As contemporaneous statements from City officials attest, the Mayor and City Council designed the Ordinance to negate the Supreme Court's vindication of Second-Amendment rights in *McDonald*, to be as "restrictive a tool as possible" for suppressing gun ownership, and to go "farther than anyone else ever has" in restricting the exercise of the right to keep and bear arms.

27. Violation of the Ordinance is punishable by fines up to $10,000 and incarceration for up to six months. Each day that such violation exists constitutes a separate offense. MCC § 8-20-300(a) & (b).

28. Defendant Daley is responsible for enforcing the Ordinance through agencies and officers under his direction. Mayor Daley appoints and supervises most municipal officers in Chicago, including (i) the Director of the Department of Administrative Hearings, which has

authority to adjudicate enforcement of the Ordinance, and (ii) the Superintendent of Police, who has the authority to arrest Chicago residents for violations of the Ordinance and to make further rules and regulations under the Ordinance.  MCC §§ 2-4-010, 2-4-020, 2-14-010, 2-14-190, 2-84-040, 8-26-090.  Mayor Daley supervises the conduct of all municipal officers and has general authority to enforce (or to designate the officer who enforces) the Ordinance.  MCC § 2-4-030.  Mayor Daley signs all firearms licenses and permits under the Ordinance,  MCC §§ 2-4-040, 8-20-110, 8-20-140, and supervises the Superintendent of Police, who transmits all denials of firearms licenses under the Ordinance, MCC § 8-20-200.

### THE IMPACT OF THE FIREARMS ORDINANCE ON THE PLAINTIFFS

29.    Plaintiff Kenneth Pacholski is a 52 year-old male.  Plaintiff Kathryn Tyler is a 53 year-old female.  They are a married couple and are residents of Chicago.  Mr. Pacholski is self-employed in the aircraft-restoration business.  Dr. Tyler is a veterinarian and the owner of her own animal clinic.

30.    Mr. Pacholski and Dr. Tyler desire to keep, or be able to legally operate—and would keep or legally operate—more than one operable handgun each in their home, but are precluded from doing so under the Ordinance.

31.    Dr. Tyler, on occasion, has a desire to possess a handgun for armed self-defense at her place of business.  Dr. Tyler would much prefer to use a handgun rather than a long gun for such purposes, both because a handgun is easier to use and because transporting a long gun is much less practicable.  For example, in the past, the emergency alarm at her business has activated in the middle of the night and she has had to proceed alone to address the situation.  She would carry a handgun for personal self-defense in such circumstances were she not precluded from doing so under the Ordinance.

8

32.    To purchase a gun under the current legal regime, or to practice with and receive

training for their firearms at a range, Mr. Pacholski and Dr. Tyler must travel outside the city.

They would buy firearms within the city if sales of these items were permitted by the law; they

would also practice at ranges within the city if such ranges were permitted to operate under the

law.

33.    Plaintiff Michael Hall is a 52-year-old male, and a resident of Chicago.  He is

married and has five children.  He is employed in the telecommunications industry.

34.    Mr. Hall is a former Fleet Marine Corps Corpsman and during his military service

he repeatedly received an "expert" rating in firearms marksmanship.

35.    Mr. Hall often works from his home office.  He desires to keep or operate—and, but

for the Ordinance, would keep or operate—more than one operable handgun in his home, so that

he can have a ready means of self- and family-defense in both his bedroom and his home office.

36.    Mr. Hall desires to be able to—and, but for the Ordinance, would—keep and bear

arms for purposes of self-defense on all parts of his property, including the curtilage of his home.

For example, in two separate incidents, Mr. Hall's truck and his wife's minivan have been

burglarized while parked in the driveway of his home.  The Ordinance, however, prohibits Mr.

Hall from bearing arms in the driveway of his home.

37.    Mr. Hall would shop for and purchase firearms and firearms accessories within the

city if sales of these items were not prohibited by the Ordinance.

38.    Mr. Hall would practice with a firearm at firearms ranges within Chicago if such

ranges were permitted to operate under the law.

39.    Mr. Hall desires to transport firearms between his home and western Illinois, Iowa,

and South Dakota, where he travels for hunting and target-shooting purposes.

40.   Plaintiff ILAFR has members who desire to sell firearms and to operate shooting ranges inside Chicago city limits for patronage by law-abiding residents and would do so but for the Ordinance. ILAFR brings this action on behalf of its members, whose activities as firearms vendors, shooting-range operators, and firearms trainers, are part of the constitutionally protected activities that Mr. Pacholski, Dr. Tyler, Mr. Hall, and other law-abiding Chicago residents would engage in but for the Ordinance.

41.   The Ordinance's total ban on firearms sales and firearms ranges prevents members of ILAFR from doing business in the City of Chicago, and thereby prevents them from engaging in a business (the sale of firearms and the operation of a firiearms range) that is part of the constitutionally protected activities that Mr. Pacholski, Dr. Tyler, Mr. Hall, and other residents of the City of Chicago would engage in but for the Ordinance.

42.   Under the Ordinance, Plaintiffs Pacholski, Tyler, and Hall face arrest, prosecution, and incarceration should they possess, carry, or transfer firearms in violation of the Ordinance. Members of ILAFR face arrest, prosecution, and incarceration if they sell or transfer firearms or operate a shooting range in violation of the Ordinance.

## THE CHICAGO ZONING ORDINANCE

43.   The development and use of land within the City of Chicago is governed, *inter alia*, by the City's Zoning Ordinance, Title 17 of the Municipal Code of Chicago. "The provisions of th[e] Zoning Ordinance are cumulative and pose limitations and requirements in addition to all other applicable laws and ordinances." MCC § 17-1-1200.

44.   It is a violation of the Zoning Ordinance to "us[e] land or buildings in any way not consistent with [its] requirements." MCC § 17-16-0201. The Zoning Ordinance divides the city into various districts (e.g., business, commercial, manufacturing, and downtown), and for each of

10

these districts sets out a number of "permitted uses," which "are permitted by right in the subject zoning district." MCC §§ 17-3-0202, 17-4-0202, 17-5-0202.

45.   The Zoning Ordinance specifies that "Retail Sales, General" is a permitted use in all business, commercial, and manufacturing districts and in some downtown districts.  MCC §§ 17-3-0207, 17-4-0207, 17-5-0207.

46.   The Zoning Ordinance specifies that "Sports and Recreation, Participant – Indoor" is a permitted use in all business and commercial districts and in some downtown districts.  MCC §§ 17-3-0207, 17-4-0207.

47.   The Zoning Ordinance defines the permitted use of "Retail Sales, General" as "[b]usinesses involved in the sale, lease or rent of new or used products or merchandise to the general public."  MCC § 17-17-0104-Y.

48.   The Zoning Ordinance defines the permitted use of "Sports and Recreation, Participant" as: "Provision of sports or recreation primarily by and for participants.... The following are participant sports and recreation use types (for either general or personal use): ... Participant sport and recreation uses conducted within an enclosed building, other than arcades and entertainment cabarets."  MCC § 17-17-0104-Z(3).

49.   Despite the fact that shooting ranges appear to fit well within the definition of the permitted use of "Sports and Recreation, Participant," the City's Commissioner of Zoning has maintained under oath that shooting ranges are currently "prohibited" and "banned" under the Zoning Ordinance.

## COUNT I

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

50.   The preceding paragraphs are incorporated herein.

11

51.    The Ordinance outlaws use of firearms for self-defense within the curtilage of one's

own home.  *See* MCC §§ 8-20-020, -030   The statutory definition of "home" expressly excludes

"(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit,

including any stairs, porches, back, side or front yard space, or common areas." MCC § 8-20-

010.

52.    Thus the Ordinance outlaws the exercise of the right to bear arms in self-defense

even when one is in one's own garage, on one's own back porch, or on the steps leading up to

one's front door.

53.    These provisions infringe upon, and impose an impermissible burden upon, Mr.

Pacholski's, Dr. Tyler's, and Mr. Hall's right to keep and bear arms under the Second and

Fourteenth Amendment.

## COUNT II

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

54.    The previous paragraphs are incorporated herein.

55.    Section 4-144-010 states that it shall be unlawful for any person "to engage in the

business of selling, or to sell, give away or otherwise transfer, any firearm." Section 8-20-100

states that "no firearm may be sold, acquired or otherwise transferred within the city, except

through inheritance of a firearm."

56.    These provisions thus impose a total ban on the sale or transfer of firearms within

Chicago, and thereby infringe upon, and impose an impermissible burden upon, Mr. Pacholski's,

Dr. Tyler's, and Mr. Hall's right to keep and bear arms under the Second and Fourteenth

Amendments.

57.    The fear of enforcement and/or prosecution that is placed upon firearms retailers desiring to market and sell firearms inside the City of Chicago—such as members of ILAFR—limits Chicago residents' access to ability to purchase firearms.  Accordingly, the Ordinance's total ban on the sale or transfer of firearms within Chicago infringes upon, and imposes an impermissible burden upon, the right to keep and bear arms of all adult law-abiding residents of Chicago.

### COUNT III

**(U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)**

58.    The previous paragraphs are incorporated herein.

59.    Section 8-20-110 prohibits possession of a firearm without a CFP, and Section 8-20-120 states that no person can obtain a CFP without "an affidavit signed by a firearm instructor certified by the State of Illinois … attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training."

60.    Yet Section 8-20-280 states that "[s]hooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited."  The Ordinance thus dictates that there can be no place in Chicago where one can obtain the firearms training that the Ordinance itself mandates for legal possession of a firearm.

61.    Section 8-24-010 further provides that "[n]o person shall fire or discharge any firearm within the city, except in the lawful self-defense or defense of another" or for very limited hunting purposes.  By proscribing the discharge of a gun for training or practice purposes, the Ordinance in fact precludes citizens from engaging anywhere in Chicago in the training that the Ordinance itself mandates as a prerequisite to legal gun ownership.

62.    These provisions infringe upon, and impose an impermissible burden upon, Mr. Pacholski's, Dr. Tyler's, and Mr. Hall's right to keep and bear arms under the Second and Fourteenth Amendments.

63.    The fear of enforcement and/or prosecution that is placed upon persons and entities desiring to engage in live firearms instruction and/or operate a firing range inside the City of Chicago—such as members of ILAFR—limits Chicago residents' ability to train with their firearms. Accordingly, the Ordinance's total ban on firing ranges within Chicago infringes upon, and imposes an impermissible burden upon, the right to keep and bear arms of all adult law-abiding residents of Chicago.

## COUNT IV

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

64.    The previous paragraphs are incorporated herein.

65.    Section 8-20-040 prohibits the possession of more than one "assembled and operable" firearm within the home by someone who is fully licensed under the Ordinance to possess a firearm. Any other firearms owned by that person must be disassembled or otherwise rendered "inoperable." If there is more than one person in the home with a CFP and a registration certificate, each such person is allowed only one gun in an operable condition.

66.    These provisions infringe upon, and impose an impermissible burden upon, Mr. Pacholski's, Dr. Tyler's, and Mr. Hall's right to keep and bear arms under the Second and Fourteenth Amendments.

## COUNT V

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

67.    The preceding paragraphs are incorporated herein.

68.    Section 8-20-020 makes it "unlawful for any person to carry or possess a handgun, except when in the person's home." Section 8-20-030 makes it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business." Section 8-20-140(a) renders it "unlawful for any person to carry or possess a firearm without a firearm registration certificate," and Section 8-20-180(c) states that "[a] registration certificate shall only be valid for the address on the registration certificate," and "[e]xcept in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." "Lawful transportation" means transportation by a person who has a FOID card, a CFP, and a firearm registration certificate, and whose firearm is "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case." § 8-20-010.

69.    Thus the Ordinance imposes a complete and total ban in Chicago on possessing or carrying a firearm outside one's "home" (as narrowly defined by the Ordinance) for personal protection—except in one's fixed place of business, where long guns, but not handguns, are permitted—and thereby infringes upon, and imposes an impermissible burden upon, Mr. Pacholski's, Dr. Tyler's, and Mr. Hall's rights under the Second and Fourteenth Amendments.

## COUNT VI

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

70.    The preceding paragraphs are incorporated herein.

15

71.    It is a violation of the City of Chicago's Zoning Ordinance, Title 17 of the

Municipal Code of Chicago, to "us[e] land or buildings in any way not consistent with [its]

requirements." MCC § 17-16-0201.

72.    The City of Chicago's Zoning Administrator and Commissioner of the Department

of Zoning and Land Use Planning has stated under oath that the Zoning Ordinance prohibits and

bans the construction and/or operation of shooting ranges in Chicago.

73.    To the extent the Zoning Ordinance bans the construction or operation of a firearms

retail business or a shooting range it infringes, and imposes an impermissible burden, upon Mr.

Pacholski's, Dr. Tyler's, and Mr. Hall's right to keep and bear arms under the Second and

Fourteenth Amendments.

74.    To the extent the Zoning Ordinance bans the construction or operation of a firearms

retail business or a shooting range by those desiring to open such businesses—such as members

of ILAFR—it limits Chicago residents' access to ability to purchase and train with firearms, and

thus infringes upon, and imposes an impermissible burden upon, the right to keep and bear arms

of all adult law-abiding residents of Chicago.


WHEREFORE, Plaintiffs pray that the Court:

A.    Enter a declaratory judgment that MCC §§ 4-144-010, 8-20-010 (to the extent it

defines "home" and "lawful transportation"), 8-20-020, 8-20-030, 8-20-040, 8-20-100, 8-20-

180(c), 8-20-280 , and 8-24-010 are null and void to the extent and because such provisions

infringe Plaintiffs' constitutional rights, and the rights of all law-abiding adult residents of

Chicago, under the Second and Fourteenth Amendments.

B.    Enter a declaratory judgment that to the extent the City of Chicago Zoning

16

Ordinance, Title 17 of the Chicago Municipal Code, bans the operation and/or construction of firearms retail businesses or shooting ranges, it is null and void to the extent and because such provision infringe Plaintiffs' constitutional rights, and the rights of all law-abiding adult residents of Chicago, under the Second and Fourteenth Amendments.

        C.        Issue injunctive relief prohibiting Defendants and their agents from enforcing MCC §§ 4-144-010, 8-20-010 (to the extent it defines "home" and "lawful transportation"), 8-20-020, 8-20-030, 8-20-040 , 8-20-100, 8-20-180(c), 8-20-280, and 8-24-010 to the extent such provisions infringe Plaintiffs' constitutional rights, and the rights of all law-abiding adult residents of Chicago, under the Second and Fourteenth Amendments.

        D.        Issue injunctive relief prohibiting Defendants and their agents from enforcing the City of Chicago Zoning Ordinance, Title 17 of the Chicago Municipal Code, to the extent such provisions infringe Plaintiffs' constitutional rights, and the rights of all law-abiding adult residents of Chicago, under the Second and Fourteenth Amendments.

        E.        Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

        F.        Grant such other relief as may be proper.

Respectfully submitted,

Stephen Kolodziej
Atty. ID# 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL 60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

s/ Charles J. Cooper
Charles J. Cooper*
David H. Thompson*
Jesse Panuccio*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

17

*Designated Local Counsel*

Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA  70471
Tel: (985) 626-5052
bkoukoutchos@gmail.com

*Admitted *pro hac vice*.

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS ASSOCIATION OF FIREARMS<br>RETAILERS, KENNETH PACHOLSKI,<br>KATHRYN TYLER, and MICHAEL HALL, | ) ) ) | |
| | ) | FILED: January 27, 2011 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 10-cv-04184<br>Judge Edmond E. Chang |
| THE CITY OF CHICAGO and<br>RICHARD M. DALEY, Mayor of the<br>City of Chicago, | ) ) ) ) | |
| Defendants. | ) | |

<u>L.R. 3.2 Notification of Affiliates</u>

Pursuant to Local Rule 3.2 of the United States District Court for the Northern District of

Illinois, Plaintiff Illinois Association of Firearms Retailers, a nonprofit corporation, hereby states

that it has no publicly held affiliates.

Stephen Kolodziej
Atty. ID# 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL  60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

*Designated Local Counsel*

s/ Charles J. Cooper
Charles J. Cooper*
David H. Thompson*
Jesse Panuccio*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C.  20036
Tel: (202) 220-9600
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA  70471
Tel: (985) 626-5052
bkoukoutchos@gmail.com

*Admitted *pro hac vice*.
*Counsel for Plaintiffs*

1

## CERTIFICATE OF SERVICE

I, Charles J. Cooper, hereby certify that on this 9th day of February, 2011, I caused a

copy of the foregoing to be served by electronic filing on:

> Michael A. Forti
> Andrew W. Worseck
> Mardell Nereim
> Rebecca Alfert Hirsch
> William Macy Aguiar
> City of Chicago, Department of Law
> Constitutional and Commercial Litigation Division
> 30 N. LaSalle St., Suite 1230
> Chicago, IL  60602

> s/ Charles J. Cooper
> Charles J. Cooper

**EXHIBIT     B**

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 5.1.1
### Eastern Division

Kenneth Pacholski, et al.

                       Plaintiff,

v.

                                              Case No.: 1:10−cv−04184
                                              Honorable Edmond E. Chang

The City of Chicago, et al.

                       Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, February 5, 2013:

         MINUTE entry before Honorable Edmond E. Chang:The cross−motions for summary judgment are under advisement, along with the recently filed supplemental briefs. Status hearing of 02/07/13 is reset to 04/04/13 at 9:00 a.m. To aid the Court in its evaluation of the motions, each side shall electronically file a copy of the entire deposition transcript of the following deponents (whichever side relies on the particular deponent (mostly the City) shall be responsible for filing the transcript): Philip Cook; Gary Kleck; Joseph Gorman; Eugene Williams; Kevin Johnson; Joseph Vince; and Daniel Webster. The parties shall file the transcripts as exhibits to supplements in support of their summary judgment motion, and the transcripts are due on or before 02/14/13. Mailed notice(slb, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.