IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL HALL and KATHRYN TYLER, | ) ) ) |
| Plaintiffs, | ) ) ) No. 13-CV-441 |
| v. | ) Judge James B. Zagel ) Magistrate Judge Young B. Kim |
| THE CITY OF CHICAGO, | ) ) |
| Defendant. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

The Second Amendment to the United States Constitution protects the fundamental right of law-abiding, responsible citizens "to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Plaintiffs, residents of the City of Chicago, desire to exercise this right by carrying firearms in public to protect themselves. *See, e.g.*, Compl. ¶ 17 ("Mr. Hall desires to be able to … carry arms for purposes of self- and family-defense … in his neighborhood, and throughout the City of Chicago."); Compl. ¶ 20 ("Dr. Tyler, on occasion, has a desire to carry in public a handgun for armed self-defense to her place of business …. If there were not a ban on publicly carrying a handgun in Chicago, Dr. Tyler would publicly carry in other situations as well."). The City of Chicago's Firearms Ordinance, however, prohibits Plaintiffs from carrying operable firearms in public. *See* Compl. ¶ 9; MCC 8-20-010, 8-20-020, 8-20-030, 8-20-180(c). The City nevertheless argues that Plaintiffs lack standing to challenge the Ordinance because Illinois law also prohibits carrying operable firearms in public. The Seventh Circuit, however, has already held that Illinois's ban on carrying

1

firearms in public violates the Second Amendment. *See Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). That decision establishes not only that Plaintiffs have *standing* to challenge to Chicago's carry ban but also that their challenge must *succeed*. The City's motion to dismiss accordingly should be denied.[1]

## ARGUMENT

**I. PLAINTIFFS HAVE STANDING TO CHALLENGE CHICAGO'S PUBLIC CARRY BAN.**

1. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

At this stage of the litigation, the City does not challenge Plaintiffs' ability to satisfy the first two requirements. *See* Defendant's Memorandum in Support of Its Motion to Dismiss ("Def. Br.") 5 n.3. And Plaintiffs do satisfy them, for the City's Firearms Ordinance harms them by prohibiting them from carrying operable firearms in public. *See* Compl. ¶¶ 15-24. Indeed, the harm inflicted by the City's carry ban is irreparable. If Plaintiffs' claims are "right, then the [carry] ban was unconstitutional when enacted and violates their Second Amendment rights

---

[1] The Ordinance provisions that Plaintiffs challenge also restrict the carrying of firearms on private property by limiting possession of handguns to a person's "home," narrowly defined to exclude the curtilage of the home or any other part of the property outside the four walls of the dwelling unit, and by limiting possession of long guns to a person's "home" or place of business. *See* MCC 8-20-010, 8-20-020, 8-20-030. As the City points out, Plaintiffs have mounted a separate challenge to this "Private Property and Business Place" aspect of the City's Ordinance in *Pacholski v. City of Chicago*, No. 10-4184 (N.D. Ill.). *See* Def. Br. 8. Given the existence of this separate challenge, Plaintiffs agree to limit their challenge in this case to what the City dubs their "Public Places Claim"—*i.e.*, their claim that they have the right to carry "guns for self defense in public areas beyond their private property or fixed place of business." *Id.* at 3.

every day it remains on the books"; "its very existence stands as a fixed harm to every Chicagoan's Second Amendment right[s]." *Ezell v. City of Chicago*, 651 F.3d 684, 698-99 (7th Cir. 2011).

Rather, the City argues that Plaintiffs do not satisfy the third requirement, redressability. As the City frames the argument, "even if Plaintiffs achieved total success on the merits and the Court enjoined the MCC's restrictions on carrying in public, that would afford Plaintiffs no real, practical relief because Illinois law would continue to ban the conduct." Def. Br. 5. But as Chicago acknowledges, that Illinois law *has already been held unconstitutional by the Seventh Circuit*. Def. Br. 6.[2] Indeed, the Seventh Circuit found Illinois's "flat ban on carrying ready-to-use guns" in public so indefensible that it ordered entry of judgment for the plaintiffs *on the pleadings* without affording any opportunity for discovery or summary judgment proceedings. *Moore*, 702 F.3d at 940, 942.

Remarkably, despite the Seventh Circuit's decision invalidating the state's "flat ban on carrying ready-to-use guns," the City argues that the Illinois's unconstitutional ban *deprives Plaintiffs of standing* to challenge the City's ban. But the City can point to no authority for this remarkable proposition. Indeed, the City's principal authority, *Harp Adver. Ill., Inc. v. Vill. of Chicago Ridge*, 9 F.3d 1290 (7th Cir. 1993), held that the plaintiff in that case lacked standing because, in addition to the ordinance it challenged, "another, *valid*, ordinance already on the books" that plaintiff did not challenge would have prohibited its conduct, *id.* at 1292 (emphasis

---

[2] The City cites a provision of Illinois's Wildlife Code that was not challenged in *Moore* and that generally requires guns transported in vehicles to be "unloaded and enclosed in a case." 520 ILCS 5/2.33(n). But even if this provision could survive *Moore*, it would not affect Plaintiffs' standing here, for their claim extends to carrying firearms in public generally, not merely in vehicles. *See Larson v. Valente*, 456 U.S. 228, 244 n. 15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.").

3

added). That is not the situation here, where the Seventh Circuit has already held that Illinois's carry ban is unconstitutional.

2. Chicago insists that Plaintiffs lack standing despite *Moore* for two additional reasons, but both its arguments lack merit.

a. First, the City points out that "the Seventh Circuit stayed entry of the mandate in *Moore* for 180 days …. Accordingly, because *Moore* was issued on December 11, 2012, the mandate is stayed until June 9, 2013. Until that date, Illinois' carry restrictions remain on the books, and Plaintiffs remain prohibited by those laws from carrying guns in public." Def. Br. 6. But nothing in Article III requires resolution of a case to have an immediate practical impact for that case to be justiciable. *See Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (finding standing even though "the effectiveness of a remedy might be delayed"). Indeed, "the Supreme Court has permitted plaintiffs to challenge laws well before their effective date. The Court has allowed challenges to go forward even though the complaints were filed almost six years and roughly three years before the laws went into effect." *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012) (citing *New York v. United States*, 505 U.S. 144, 153-54 (1992); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 530, 536 (1925)); *see also Vill. of Bensenville v. FAA*, 376 F.3d 1114, 1119 (D.C. Cir. 2004) (plaintiffs had standing to challenge FAA decision that would not take effect for 13 years). Thus, the fact that the "effective date" of the *Moore* decision is about two months from now does not undermine Plaintiffs' standing.

A contrary ruling would make little practical sense. If the Complaint were dismissed for lack of standing before June 9, 2013, Plaintiffs could simply refile the same Complaint on June 10, 2013—a date on which the City itself concedes that the Illinois statute will be invalid and

4

therefore will not cast any doubt on the Plaintiffs' standing to challenge the City's Ordinance. The City cites no authority that supports, let alone requires, such a pointless judicial exercise. It is not as if Plaintiffs predicate their standing to challenge the City's Ordinance on *speculation* that the Illinois public carry law *might* be struck down in the future; the fate of that law is already known because it has already been held to violate the Second Amendment by the Seventh Circuit in a decision that, of course, binds this Court.

Finally, Chicago's argument is based on an unsound premise—that the existence of Illinois's carry ban undermines Plaintiffs' standing to challenge the City's carry ban. But because a ruling that the City's ban violates the Second Amendment would undermine the validity of Illinois's ban, Plaintiffs' would have standing *even if Illinois's carry ban had never been challenged or found unconstitutional*. *Harp* is not to the contrary. There, the plaintiff wanted to erect a billboard in Chicago Ridge, Illinois, but certain provisions of the village's sign code and zoning code "got in the way." *Harp*, 9 F.3d at 1291. The Seventh Circuit, however, held that the plaintiff lacked standing because, due to an ordinance provision the plaintiff did not challenge, the plaintiff "could not put up its sign even if it achieved total victory." *Id*. (citing *Renne v. Geary*, 501 U.S. 312, __ - __, 111 S. Ct. 2331, 2337-38 (1991)).

But total victory in *Harp* would not have in any way *undermined* the validity of the unchallenged provision. That provision simply imposed a size restriction on signs in the village, *see Harp*, 9 F.3d at 1291; the provisions the plaintiff challenged, by contrast, allegedly imposed content-based restrictions on speech and gave village officials unbridled discretion to exempt signs from certain requirements of the sign code, *see id.* (challenge to zoning code depended "on the theory that a ban on off-premises signs discriminates against non-commercial speech"); *Harp Adver. Ill., Inc. v. Vill. of Chicago Ridge*, 809 F. Supp. 1315, 1319 (N.D. Ill. 1992) (describing

5

challenged sign code provisions). Underscoring this fact, the Supreme Court case *Harp* cited to support its holding suggested that the plaintiffs lacked standing to challenge one State statute on redressability grounds due to the existence of another State statute that a judgment for the plaintiffs may not have impugned: "Overlapping enactments can be designed to further differing state interests, and invalidation of one *may not impugn the validity* of another." *Renne*, 501 U.S. at 319, 111 S. Ct. at 2338 (emphasis added).

Here, by contrast, the City's and the State's carry bans are both predicated on the (unfounded) rationale that they will advance public safety, and invalidation of Chicago's ban would impugn the validity of the State's ban regardless whether the State's ban had already been deemed unconstitutional. In this respect, this case is like *Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009), which distinguished *Harp* on precisely these grounds. In *Maldonado*, the Ninth Circuit held that the plaintiff had standing to challenge California's Outdoor Advertising Act ("COAA") despite the fact that an unchallenged Redwood City, California ordinance also may have prohibited his desired actions:

> Caltrans argues that even if Maldonado were to prevail on his constitutional claims, the city ordinance would still prohibit Maldonado's advertising, hence obtaining relief in this court would be fruitless.
>
> Caltrans's argument might have merit if the Redwood City prohibitions were clearly identifiable, enforceable, *and distinct from* the federal challenge to the amended COAA. The Seventh Circuit considered such a circumstance in *Harp* ….
>
> When evaluating redressability, the key question is whether the harm alleged by the plaintiff is *likely* to be alleviated by a ruling in its favor. *See Harp*, 9 F.3d at 1292 …. Maldonado's constitutional challenge to the COAA applies *with equal force* to the similarly-worded Redwood City ordinance, which also bans offsite commercial advertising. Although the Redwood City ordinance might present another obstacle in Maldonado's path were he to prevail in this litigation, *it is one that a favorable ruling here would likely allow him to surmount*. Therefore, the Redwood City Ordinance *does not* defeat Maldonado's standing to challenge the constitutionality of the COAA.

6

*Maldonado*, 556 F.3d at 1043-44 (all but second emphasis added). Similar reasoning applies here, for Plaintiffs' challenge to the City's carry ban would apply with equal force to the State's carry ban.

  b.  Chicago's second argument fares no better than its first. The City asserts that "Plaintiffs have not shown, nor can they show … that they would be allowed to carry guns in public under any new gun statutes that Illinois may pass before the mandate issues in *Moore*." Def. Br. 6. This is a novel approach to Article III. The City speculates at length (Def. Br. 6-8) that Plaintiffs *might* not be able to satisfy new restrictions that Illinois *might* impose—assuming that the State chooses to enact any new law regulating the public carriage of firearms by the June 9, 2013 deadline set by the Seventh Circuit. According to Chicago, this means that Plaintiffs have no standing to challenge the City's ban. But standing cannot be denied on the basis of speculation any more than it can be predicated on the basis of speculation.

  This same novel redressability argument could have been made in *Moore*. It was always possible there—indeed, it is still possible, and this is the City's core argument against standing—that victorious plaintiffs Moore and Shepard, just like Hall and Tyler here, might not qualify to carry a gun in public under whatever new law Illinois might enact. Nobody knows what those restrictions (assuming they are constitutional) might be, so nobody can predict whether Hall and Tyler (or Moore and Shepard) will be able to comply with them. Yet this did not stop the Seventh Circuit from striking down Illinois's ban on the public carrying of firearms. In other words, the plaintiffs in *Moore* were required neither to speculate about the myriad possible new firearms statutes that the State of Illinois might enact nor required to show that they would themselves qualify for the public carrying of firearms under each and every possible firearms law

Illinois might adopt once its flat ban was struck down. Moreover, it is not even clear that a new law will be in place by the time the mandate issues in *Moore*.

The City's view of standing doctrine is bizarre: it puts the burden on plaintiffs to show that their constitutional claim against a current law would be redressed regardless of what the legislature might enact in the future. Def. Br. 6-7 ("There is no guarantee at present that Plaintiffs will be able to comply with any forthcoming laws, and indeed, they may never be able to. Until the laws are drafted, enacted and complied with by Plaintiffs, Plaintiffs will not be able to establish that Illinois law no longer stands as [an] independent barrier to their being able to carry in public."). The City cites no authority for such a strange doctrine, and we are aware of none. Indeed, *Harp* refutes it, for it explains that "[w]hen the challenged statute is the only thing standing in the way of additional speech, the winner of the contest has a valuable prize, *even if the government may enact a different statute that snatches away the victory*." 9 F.3d at 1292 (emphasis added).

*Clinton v. City of New York*, 524 U.S. 417 (1998), likewise demonstrates that speculation about possible future government action will not draw into question a party's standing. There, President Clinton had exercised his powers under the Line Item Veto Act to cancel a provision of law that relieved the State of New York of an obligation to return $955 million in federal subsidies to the United States. *Id.* at 422-23. If New York were required to return the money, the plaintiffs would have had to pay the State millions of dollars in retroactive tax payments. *Id.* at 426. The Government argued that the plaintiffs lacked standing to challenge the Act because New York had pending before the Department of Health and Human Services requests to waive its obligation to return the money, but the Court found "no merit in the suggestion that New York's injury [was] merely speculative because HHS [had] not yet acted on the State's waiver

8

requests." *Id.* at 430. Likewise here, speculation about the potential for future action by the Illinois legislature to affect Plaintiffs' right to carry firearms should not interfere with their standing to challenge the City's carry ban.

At any rate, *Heller* demonstrates that Plaintiffs would have standing to challenge the City's ban on carrying arms in public even if Illinois had *already* enacted a public-carry licensing statute and even if Plaintiffs were unsure to be able to obtain a license. In *Heller*, the plaintiff challenged the District of Columbia's ban on possessing handguns in the home. Before the Supreme Court, the plaintiff *did not* challenge the District of Columbia's separate licensing requirement, and the Supreme Court did not address it. *See Heller*, 554 U.S. at 631. Indeed, while the Court assumed that the plaintiff would qualify for a license, it acknowledged the possibility that he would not. *See id. at* 631 ("Before this court petitioners have stated that 'if the handgun ban is struck down and respondent registers a handgun, he could obtain a license, assuming he is not otherwise disqualified'…."); *id.* at 635 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home."). But this possibility posed no obstacle to the Court striking down the District's handgun ban. Here, Plaintiffs have stated that they "will … comply with any appropriately implemented regulations enacted by the State of Illinois regarding public carriage in the event that any such regulations are enacted." Compl. 5 n.1. And this Court may assume—as the Supreme Court did in *Heller*—that once the City's flat ban is struck down, Plaintiffs will not be otherwise disqualified under the law from carrying a firearm in public. If instead they are so disqualified under whatever new law Illinois enacts, the constitutionality of that hypothetical statute can be resolved at that time. This Court need not forecast what, if anything, the Illinois Legislature will do (whether by June 9, 2013, or

9

thereafter) in order to strike down the City's flat ban on the public carrying of firearms for self-defense, just as the Seventh Circuit struck down the State's flat ban.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss should be denied.

Dated: April 4, 2013

Stephen Kolodziej
FORD & BRITTON, P.C.
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
(312) 924-7500
(312) 924-7516 (fax)
skolodziej@fordbritton.com

Respectfully submitted,

s/ Charles J. Cooper
Charles J. Cooper*
David H. Thompson*
Peter A. Patterson*
Nicole J. Moss[*]
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Charles J. Cooper, hereby certify that on this 4th day of April, 2013, I caused a copy of the foregoing to be served by electronic filing on:

>Andrew W. Worseck
>Rebecca Alfert Hirsch
>City of Chicago, Department of Law
>Constitutional & Commercial Litigation Division
>30 N. LaSalle Street, Suite 1230
>Chicago, IL  60602


>   s/ Charles J. Cooper
>      Charles J. Cooper