**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL HALL and KATHRYN TYLER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 13 C 441 |
| v. | ) | |
| | ) | Judge Zagel |
| THE CITY OF CHICAGO, | ) | |
| | ) | Magistrate Kim |
| Defendant. | ) | |

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant City of Chicago ("Defendant" or "City"), by its attorney, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby submits its reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Response").  Plaintiffs' Response essentially advances three arguments as to why their "Public Places Claim" in this case satisfies the redressability requirement of Article III standing.[1]  Each argument fails.

First, Plaintiffs argue that Illinois law does not stand as an independent bar to their being able to carry in Chicago because the existing Illinois carry statute has been ruled unconstitutional by the Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), *rehearing denied*, 708 F.3d 901 (Feb. 22, 2013).  *See* Response at 3-4.  This confuses the Seventh Circuit's ruling on the merits with the practical impact of that ruling.  The Seventh Circuit has stayed the mandate in *Moore* for 180 days, which means that Illinois' carry ban remains on the books and

---

[1]  Plaintiffs agree that the "Private Property and Business Place" aspect of their challenge to Chicago's carry restrictions is not part of this case.  *See* Reponse, at 2 n.1.  It should therefore be dismissed, and this brief accordingly addresses only the "Public Places" aspect of their carry claim.

Plaintiffs cannot lawfully carry under Illinois law during that time – a fact that Plaintiffs do not

contest and a result no different than if the court had upheld Illinois' law. Plaintiffs' attempt to

distinguish *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge*, 9 F.3d 1290 (7th Cir.

1993) therefore falls flat. Plaintiffs contend that the ordinance in *Harp* that remained as a barrier

to the plaintiff being able to erect its sign was an unchallenged and valid ordinance, whereas

here, the Illinois law has been declared unconstitutional. Response at 3. But *Harp* did not turn

on the fact that the other ordinance was unchallenged. Rather, the controlling factor was that the

that the plaintiff's injury – its inability to build its sign – would not be "alter[ed]" by "winning

the case." *Harp*, 9 F.3d at 1292. So too for Plaintiffs: Winning this case will not alter the fact

that Plaintiffs cannot carry in Chicago due to the stay of the mandate in *Moore*.

Second, Plaintiffs argue that the *Moore* stay is of no consequence because a ruling in their

favor here need not have an "immediate practical impact." Response, at 4. But none of the cases

they cite support this. *Massachusetts v. EPA*, 549 U.S. 497 (2007), involved a challenge by

Massachusetts to the EPA's failure to regulate greenhouse gases from new motor vehicles.

Massachusetts claimed that this failure contributed to climate change, which raised sea levels and

harmed Massachusetts' coastal land. *See id.* at 521-22. On the issue of redressability, the Court

found that a meaningful remedy could be provided because regulating greenhouse gases from

new vehicles could slow or reduce global warming. The Court did observe that the

"effectiveness" of this remedy "might be delayed," but this was because of the realities of the

vehicle industry: It would take a (short) period of time for a new vehicle fleet to replace the

existing one and hence commence the reduction of greenhouse gasses. *Id.* at 525. The Court's

statement had nothing to do with whether a court order awarding Massachusetts' desired relief

was stayed or otherwise delayed. *EPA* is further distinguishable because the Court applied a special, relaxed standing analysis that does not apply here. In *EPA*, Congress, by statute, had provided a specific right to challenge the EPA's lack of regulation, which meant that a plaintiff could sue "without meeting all the normal standards for redressability and immediacy." *Id.* at 517-18. In addition, the plaintiff was "a sovereign State," and "States are not normal litigants for the purpose of invoking federal jurisdiction." *Id.* at 518. These two factors meant that Massachusetts was "entitled to special solicitude" in the standing analysis. *Id.* at 520. Neither of these factors are present here.

Relatedly, Plaintiffs cite cases allowing challenges to statutes prior to their effective date. *See* Response at 4. It goes without saying that these cases do not address the impact of a stayed appellate mandate in a separate case addressing a separate statute. And, on their own terms, Plaintiffs' "effective date" cases are irrelevant because Plaintiffs are challenging an existing, effective Chicago ordinance. The issue is not whether and when that ordinance will be applied to Plaintiffs, but whether there is some legal bar external to the ordinance (*i.e.*, Illinois law) that prevents Plaintiffs from realizing the relief (carrying in public) that they are seeking.[2]

Until the *Moore* mandate issues, Illinois's current carry ban remains as an impediment to Plaintiffs' carrying in Chicago. And Plaintiffs' argument that dismissing their suit now makes

---

[2] Further, Plaintiffs' "effective date" cases address the injury prong of standing, not redressability. *See Thomas Moore Law Center v. Obama*, 651 F.3d 529, 535, 537 (6th Cir. 2011), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012) (discussing statute's effective date in the context of analyzing "the imminence of the plaintiffs' injury" was "the only Article III question"; with respect to redressability, there was "little to talk about"); *Pierce v. Society of Sisters*, 268 U.S. 510, 536 (1925) (suits not premature because the "injury to appellees was present and very real" and if no relief had been granted prior to statute's effective date, the "injury would have become irreparable"); *Village of Bensenville v. FAA*, 376 F.3d 1114, 1119 (D.C. Cir. 2004) (discussing injury-in-fact requirement of standing).

"little practical sense" because they could just refile it on June 10, 2013 (*i.e.*, after the mandate issues), *see* Response at 4, ignores two key facts. For one, there is no guarantee that the mandate will necessarily issue after the 180 days. Illinois may still petition the United States Supreme Court for a writ of certiorari in *Moore*, which could result in a further stay of the mandate, if not an outright reversal of the Seventh Circuit's decision. *See* Fed. R. App. P. 41(d)(2).[3] Illinois could also seek an extension of the stay even if it does not petition for certiorari. *See* Fed. R. App. P. 41(d)(1). Moreover, if and when the mandate should issue, there is no guarantee that, on that date, Plaintiffs would be able to carry under Illinois law. *See* Defendant's Memorandum in Support of Its Motion to Dismiss ("Def. Mem.") at 6-8. Plaintiffs cite nothing showing that they would be qualified under Illinois law at that time, nor could they, since they can neither predict what kind of carry regulations Illinois may pass to replace its ban, nor ensure that they will qualify under them. Indeed, Plaintiffs admit that they may be "disqualified." Response at 9. Dismissal is therefore hardly a "pointless" exercise. Response at 5. The Article III standing requirements are a predicate to a federal court's jurisdiction and are to be respected; and when one of them does not exist, a court is not to hear the case. *See* Def. Mem. at 3-4. Until Plaintiffs demonstrate that they are able to carry in public under Illinois law – and they may never be able to show this – they will not have established Article III standing because an injunction against Chicago's restrictions will bring them no real relief.

Plaintiffs confusedly counter that a ruling striking down Chicago's restrictions would

---

[3] Under Supreme Court Rules 13.1 & 13.3, Illinois has 90 days from the denial of its petition for rehearing *en banc* in *Moore* to petition for certiorari. Since the petition for rehearing was denied on February 22, 2013, Illinois has until May 23 to file a petition for certiorari, unless it is granted an extension under Supreme Court Rule 13.5.

yield a benefit because it would "undermine" the validity of Illinois' carry ban and could be parlayed in aid of attacking that ban. Response at 5-6. *See also id.* at 6 (quoting *Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009) (favorable ruling for plaintiff against state statute "would likely allow him to surmount" local ordinance as well). But unlike the *Maldonado* plaintiff, who could take his victory against the first statute and use it as a chit in subsequent litigation against a second statute, a victory here will not add any arrow to Plaintiffs' quiver that they could deploy against Illinois' carry ban because that ban has already been held unconstitutional.

Finally, Plaintiffs argue that the carry regulations that Illinois might pass following *Moore,* and Plaintiffs' ability to qualify under them, are not relevant to redressability because these potentialities did not prevent *Moore* itself from moving to the merits and striking down Illinois' current carry ban. *See* Response at 7-8. But *Harp* explains that this is because "[w]hen the challenged statute is the only thing standing in the way of [a plaintiff's desired conduct], the winner of the contest has a valuable prize, even if the government may enact a different statute that snatches away the victory." *Harp*, 9 F.3d at 1292. Winning in such a case provides a benefit because it moves the ball forward and forces the government to enact a new statute, one that at least comports with the constitution if it does not also allow the plaintiff to engage in the desired conduct. But unlike the *Moore* plaintiffs' victory, a ruling in Plaintiffs' favor in this case will have no impact on what Illinois does, when it does it, or whether Plaintiffs will qualify under whatever new statute Illinois passes. Moreover, *Harp* is equally clear that when – as here – the challenged statute is not the "only thing" preventing a plaintiff from his desired activity, there is no standing: The *Harp* plaintiff "ha[d] no similar prospect of gain" because prevailing against the statutes that it challenged "would not let it erect the proposed sign" due to the other ordinance

that barred the sign.  *Id.*  Plaintiffs need not show that they would be able to carry under future regulations that *Chicago* might pass in order to challenge *Chicago*'s current carry restrictions, but they do need to show that Chicago's restrictions are the only thing standing in the way of their being able to carry in Chicago.  This they cannot do.[4]

Relatedly, Plaintiffs argue that in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the possibility that the plaintiff would have to satisfy licensing criteria did not pose a standing barrier to the Court's striking down the District's ban on handgun possession in the home.  *See* Response at 9.  But this ignores that, in *Heller*, the plaintiff's ability to satisfy those criteria was not contested by the government, and that the Court accordingly "assume[d]" that the District's "issuance of a license will satisfy [the plaintiff's] prayer for relief."  *Id.* at 571-72.  That is, under the facts and assumptions of that case, the flat ban on handgun possession was the only thing standing in the way of the plaintiff being able to have a handgun in his home, a thing that could be fully redressed by the Court striking down the ban.  Here, however, it cannot be assumed that Plaintiffs will be able to satisfy any applicable licensing criteria enacted by Illinois.  As noted above, they acknowledge that they may be disqualified under those criteria, and their unilateral representation that they "will comply" with forthcoming regulations is hardly enough.  The regulations do not even exist yet, and, in any event, Plaintiffs cannot usurp Illinois's authority to review their applications and determine whether Plaintiffs would in fact be qualified.

---

[4]  In aid of their argument, Plaintiffs also cite *Clinton v. City of New York*, 524 U.S. 417 (1998).  But that case did not address the scenario presented here of an independent legal bar to the plaintiffs' desired relief.  Indeed, its standing analysis as to the New York payment did not address redressability at all but instead addressed whether the plaintiffs satisfied the injury prong of standing – *i.e.*, whether their injury was "speculative" and "abstract and widely dispersed" rather than "significant" and "immediate."  *Id.* at 430-31.

At bottom, Plaintiffs are correct that this Court "need not forecast what, if anything, the Illinois Legislature will do." Response at 9. Rather, the burden is upon Plaintiffs to show – at whatever time such may be the case – that Illinois law no longer stands as an obstacle to their being able to carry in Chicago. They have not done this.

## **CONCLUSION**

For the foregoing reasons, the City respectfully requests that the Court dismiss Plaintiffs' Complaint.

Respectfully submitted,

STEPHEN R. PATTON
CORPORATION COUNSEL
CITY OF CHICAGO

Dated: April 26, 2013                BY:    /s/ Andrew Worseck
                                            One of Its Attorneys

Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-9010

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the Defendant, hereby certifies that on April 26, 2013, he served a copy of the foregoing **Reply in Support of Defendant's Motion to Dismiss** on the parties listed below by electronic means pursuant to Electronic Case Filing (ECF):

Charles J. Cooper
David H. Thompson
Nicole J. Moss
Peter A. Patterson
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036

Stephen Kolodziej
FORD & BRITTON, PC
33 N. Dearborn Street, Suite 300
Chicago, IL 60602

/s/ Andrew Worseck

8